UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUZZFEED, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 19-3062 (DLF)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), the Department of Homeland Security ("Department") and U.S. Customs and Border Protection ("CBP"), by and through the undersigned counsel, respectfully submit this Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment in response to the Complaint filed by Buzzfeed, Inc. ("Plaintiff").

## INTRODUCTION AND SUMMARY

Plaintiff commenced this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq*. ("FOIA"), seeking records pertaining to custody databases used in a memorandum pertaining to alleged overcrowding at Rio Grande Valley Detention Center (a/k/a the "RGV alert").   The memorandum itself is a public record.   Defendants determined that CBP's Enforcement Integrated Database or "EID"—which captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by Defendants' components—was the database most likely to contain responsive information.

Because of the lack of clarity regarding Plaintiff's request, the parties conferred and CBP agreed to produce responsive EID data from 2010 to the date of the search reflecting Border Patrol sector, Date and Time of Apprehension, Citizenship, Gender, Age, Demographic, Time in the U.S., Date and Time of Initial Booking, Date and Time of Final Booking, and Time in Custody. CBP produced a disc containing a spreadsheet file for each fiscal year from FY2010 to FY2020, comprising over 4,423,000 unredacted rows of responsive data, reflecting the data fields listed above.

Despite the volume of CBP's production, Plaintiff was dissatisfied.   Specifically, after CBP's production Plaintiff subsequently requested Defendant to produce facility names, Alien or A-numbers for each individual or some other "unique identifier" that would permit Plaintiff to track individuals and aggregate their records across multiple data sets, justification for some blanks in the data provided, and technical documentation revealing the underlying structure, code, and maintenance of EID.   This production is not required under FOIA.   Indeed, there is no genuine dispute that Defendants' retrieval of responsive data was adequate and that the information that Plaintiff now seeks is exempt under FOIA.

Disclosure of the additional data or information that Plaintiff now seeks would constitute an unwarranted invasion of the apprehended individuals' privacy under FOIA Exemptions 6 and 7(C).   Also, location and other information related to Defendants' databases that Plaintiff seeks would be protected by FOIA Exemption 7(E) because these are law enforcement information and data and their disclosure would risk circumvention of the law.

## BACKGROUND

Plaintiff filed this FOIA action "to force Defendants [] to produce records pertaining to [Defendants'] custody databases . . . used in a specific memorandum regarding dangerous overcrowding in Rio Grande Valley Detention Center" aka the "RGV alert."   ECF No. 1 ("Pl's Compl.") at 1 ¶ 1; *see also* Declaration of Patrick Howard ("Howard Decl.") at 4 ¶ 13.   The Memorandum Plaintiff referred to was Defendants' Office of Inspector General OIG-19-51 Report, dated July 2, 2017.   *Id.* at 2 ¶ 7.   Specifically, Plaintiff sought "any and all databases containing records on which the calculation in the above sentence [in the RGV Alert] are based," specifying their demand for "a full and up-to-date copy of the database(s) referenced in the above custody database," but "not summary reports."   Howard Decl. at 4-5 ¶ 15.   Plaintiff also sought "all records from 2010 through the date of the search documenting the structure and use of databases relied upon, to specifically include user manuals, schemas, layout, relationships, and definitions of variables."   *Id.* at 5 ¶ 17.

CBP's FOIA Division rarely has direct access to records that may be responsive to complex requests such as this request.   *See* Howard Decl. at 3 ¶ 10.   Instead, the FOIA Division must first determine which CBP offices are likely to have responsive information and then work with those offices to gather any potentially responsive records.   *Id.*   CBP's FOIA Division makes these determinations based on its familiarity with the types of records that each office maintains, assessments of where responsive records are likely to be maintained, a review of the content of the request itself and the nature of the records sought, as well discussions with knowledgeable agency personnel.   *Id.*   Once the offices likely to have responsive information have completed their search and located potentially responsive records, the FOIA Division must process them for release.   Processing records requires: (1) reviewing records for responsiveness

to the request and (2) reviewing responsive records to excise and withhold information that falls within any one of FOIA's nine statutory exemptions from disclosure.   *See* 5 U.S.C. § 552(b). *Id*. at 4 ¶ 11.

To review responsive records for information exempt from disclosure, a CBP FOIA processor must (1) meticulously examine, line by line, each responsive record to identify potential redactions; (2) apply redactions if necessary; and (3) identify redactions for the plaintiffs (which could be a name, email address, phone number, single word or phrase, or substantial portions of a document) with the applicable exemption(s).   *See* Howard Decl. at 4 ¶ 12.   In this case, CBP's FOIA Division staff carefully evaluated the request and considered which offices, databases, and personnel were likely to hold responsive information and determined that the office mostly likely to have information responsive to Plaintiff's request was the U.S. Border Patrol ("Border Patrol").   *Id*. at 5 ¶ 19.   The Border Patrol is the mobile, uniformed law enforcement arm responsible for securing U.S. borders between ports of entry and patrolling the nation's borders to detect, prevent and apprehend terrorists, undocumented individuals, and illegal traffickers of people and contraband.   *Id*. ¶ 20.   CBP's FOIA Division, in consultation with the Border Patrol, determined that responsive records within CBP's control were likely to be found within EID.   EID captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by Department components, including the Border Patrol.   *Id*. at 6 ¶ 21.   CBP is "unaware of additional sources of information likely to be responsive to" Plaintiff's request.   *Id*.

Due to some confusion over the scope of Plaintiff's request, *see* Howard Decl. at 6 ¶¶ 22-24, the parties agreed that CBP would produce responsive documents as a single entry for

each apprehension, as opposed to a summary report, for a timeframe of January 2010 to date of search.  *See* Howard Decl. at 7 ¶¶ 24-25.   The parties agreed that the information would cover All Southwest Border Sectors and Data Fields as follows: Border Patrol sector, Date and Time of Apprehension, Citizenship, Gender, Age, Demographic, Time in the U.S., Date and Time of Initial Booking, Date and Time of Final Booking, Time in Custody.   *Id*.   On November 8, 2020, CBP shipped a disc containing a spreadsheet file for each fiscal year from FY2010 to FY2020, comprising over 4,423,000 unredacted rows of responsive data, reflecting the data fields listed above.   *Id*.   Subsequently, Plaintiff sought additional information, namely; (a) The "facility name;" (b) the alien registration number ("A-number") for each individual, or some other "unique identifier" that would permit Plaintiff to track individuals and aggregate their records across multiple data sets; (c) justification for any "blanks" in the data; and (d) technical documentation revealing the underlying structure, code, and maintenance of EID.   *Id*. ¶ 26. The requested information is exempt from disclosure for the reasons discussed below.   *Id*.

Although CBP produced location information identifying the "Sector" (identification of one of the 20 USBP regions) in which the encounter occurred,[1] further parsing of the location data, in a data production of this size, would disclose law enforcement sensitive techniques and procedures, and enable circumvention of law enforcement by yielding patterns and inferences about operational capacity, staffing, resource allocation, and transfer routes.   *See* Howard Decl. at 8-9 ¶ 21.   Disclosure of the requested information would inform would-be violators which sites are most vulnerable, and the circumstances under which Border Patrol is prompted to redistribute entrants or personnel between stations.   *Id*. at 9 ¶ 33.   Production would enable

---

[1]      Border Patrol Sectors include: Big Bend, Blaine, Buffalo, Del Rio, Detroit, El Centro, El Paso, Grand Forks, Havre, Houlton, Laredo, Miami, New Orleans, Ramey, Rio Grande Valley, San Diego, Spokane, Swanton, Tucson, and Yuma.   *See* Howard Decl. at 8 n1.

third parties to circumvent the law by altering smuggling routes and patterns of conduct, adopting new methods of criminal operation, and effectuating other countermeasures to law enforcement operations, or planning disruptions of law enforcement operations in violation of criminal and immigration laws.   *Id*.

With regarding to Alien or A-Numbers, disclosure of the A-number, or similar unique identifier, that would enable tracking and aggregation of data about individuals across multiple data sets.   *See* Howard Decl. at 9 ¶ 34.   Plaintiff appears to have initially conceded this when they initially requested that A-file information be removed or redacted, and that records stored in separate tables should not be joined.   *Id*.   A-Numbers are exempt from disclosure pursuant to FOIA Exemptions 6 and 7(c).   *Id*.   Like social security numbers and addresses, disclosure of a unique identifier like an A-Number would pose an unwarranted invasion of privacy of those people whose encounters with Border Patrol are reflected in the production.   *Id*. at 9-10 ¶ 35. Production of this personally identifiable information could lead to identifying the third-party individuals.   *Id*.   A key feature of databases like EID, shared by multiple law enforcement partners, is the use of multiple data points (especially identifiers like A-numbers) to ensure accurate identification of a person, even with incomplete information.   *Id*.

"The more discrete details about an individual are disclosed, the stronger is the 'mosaic effect,' whereby data may be aggregated from public, private, breached, or open sources to identify or profile an individual, family, or social group."   Howard Decl. at 10 ¶ 36. "Ubiquitous targeted advertising exemplifies the power and sophistication of aggregated data. In this case, CBP has already produced data regarding the individuals' age, citizenship, gender, and apprehension details in the context of a Border Patrol encounter."   *Id*.   The circumstances of encounters with the Border Patrol present particular privacy concerns.   *Id*. at 10 ¶ 37.   Entrants

may have traveled claiming asylum, seeking emergency medical care, or fleeing other dangerous situations or people.   *Id.*   "Thousands were juveniles [and] [o]thers may wish to avoid any stigma attached to their encounter with immigration authorities.   None have joined third-party Plaintiffs in their request for disclosure."   *Id.*

Plaintiff also sought a decade's worth of records documenting the structure and use of EID, including manuals, schemas, layout relationships, and definitions of variables, i.e. the keys and blueprints to the Department's enforcement data infrastructure.   Howard Decl. at 10 ¶ 38. Such technical, law enforcement sensitive material falls squarely within Exemption 7(E) because its release would facilitate breach, sabotage, alteration, or manipulation of the Department's law enforcement database.   *Id.*

## STANDARD OF REVIEW

**A.      General Summary Judgment Standard**

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   A genuine issue of material fact is one that would change the outcome of the litigation.   *Id.* at 247.   "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case."   *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).   In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.   477 U.S. 317, 322-23 (1986).

**B.** **Summary Judgment Standard as Applied to FOIA Cases**

FOIA cases are appropriately resolved at summary judgment.   *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).   For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts.   *Hayden v. Nat'l Sect. Agency*, 608 F.2d 1381, 1384 (D.C. Cir. 1979).   In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested has been produced, is unidentifiable, or is exempt from disclosure.   *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

"Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition.   The burden is always on the movant to demonstrate why summary judgment is warranted.   The nonmoving party's failure to oppose summary judgment does not shift that burden.   The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (internal quotations omitted).

An agency may satisfy the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence, which show that the documents in question were produced or are exempt from disclosure.   *Hayden*, 608 F.2d at 1384; *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be resolved solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pub. Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## ARGUMENT

### A.    Defendants Conducted an Adequate Search

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents."   *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)); *Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.* (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).   Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search.   *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D.D.C. 2009).   An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched."   *Oglesby*,

920 F.2d at 68; *see also Defs. of Wildlife*, 623 F.Supp.2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used).   However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment.   *Weisberg*, 627 F.2d at 371.   Moreover, conclusory assertions about the agency's thoroughness are insufficient.   *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. CIA*, 849 F.Supp.2d 6, 11 (D.D.C. 2012) ("The affidavit must explain the scope and method of [its] search in a non-conclusory fashion.").

"Agency affidavits are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 1200 (D.C. Cir. 1991), which can be rebutted with "evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests.   *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology, Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1981)); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1981) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

In this case, Defendants are entitled to summary judgment regarding the adequacy of their search as demonstrated by its appropriate interpretation of Plaintiff's request as well as its search reflected in the Howard Declaration.   Plaintiff sought "any and all databases containing records on which the calculation in the above sentence [in the RGV Alert] are based," specifying their demand for "a full and up-to-date copy of the database(s) referenced in the above custody database," but "not summary reports."   Howard Decl. at 4-5 ¶ 15.   Plaintiff also appeared to

request all records from 2010 through the date of the search documenting the structure and use of databases relied upon, to specifically include user manuals, schemas, layout, relationships, and definitions of variables.   *Id*. at 5 ¶ 17.

Based on its expertise, CBP's FOIA Division determined that the office mostly likely to have information responsive to the Initial Request was the Border Patrol.   *Id*.   Specifically, Defendants determined that responsive records were likely to be found within the EID, which is a shared common database repository operated by U.S. Immigration and Customs Enforcement ("ICE").   *Id*. at 6 ¶ 21.   EID captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by Department components, including the Border Patrol.   *Id*.   Defendants are "unaware of additional sources of information likely to be responsive to" Plaintiff's request.   *Id*.

But Plaintiff's request was not a model of clarity because, while it sought records in relationship to the calculation in the RGV Alert relating to 826 minors sometime in FY19, Plaintiff did not expressly request records, but "any and all databases containing records," without limitation to location, date range, or age of the individual.   *Id*. at 6 ¶ 22.[2]   In light of this lack of clarity, the parties engaged in discussions to narrow the scope of Plaintiff's request and reached an agreement.   *Id*. at 7 ¶ 24.   Based on the parties' agreement, CBP produced a disc containing a spreadsheet file for each fiscal year from FY2010 to FY2020, comprising over 4,423,000 unredacted rows of responsive data, reflecting the data fields listed above.   *Id*. ¶ 25.

---

[2]      According to the RGV Alert, the Rio Grande Valley sector alone had "nearly a quarter million apprehensions in the first eight months of FY 2019[.]"   *See* Howard Decl. at 6 ¶ 22. USBP Sectors include: Big Bend, Blaine, Buffalo, Del Rio, Detroit, El Centro, El Paso, Grand Forks, Havre, Houlton, Laredo, Miami, New Orleans, Ramey, Rio Grande Valley, San Diego, Spokane, Swanton, Tucson, and Yuma.   *Id*. at 8 n1.

"[A] search need not be perfect, [but] only adequate . . . measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). To prevail on summary judgment, then, the defending "agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure," *Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998) (quoting *Weisberg*, 705 F.2d at 1351). In general, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Here, there can be little doubt that Defendants' search was reasonably calculated to uncover responsive records and, not only that, but Defendants also produced a spreadsheet file for each fiscal year from FY2010 to FY2020, comprising over 4,423,000 unredacted rows of responsive data, reflecting the data fields listed above. Howard Decl. at 7 ¶ 25. The fact that Defendants used the terms of Plaintiff's own request to search for responsive records and did in fact return responsive criminal files from which responsive extradition-related records were produced is evidence of Defendants' adequate search. *See Pinson v. Dep't of Just.*, Civ. A. No. 12-1872, 2017 U.S. Dist. LEXIS 140312, at *19-21 (D.D.C. Aug. 31, 2017) ("[T]he Court thus grants the DOJ summary judgment" because "EOUSA adequately searched . . . all record systems likely to contain responsive records . . . and describes how the FOIA coordinator searched the applicable boxes of physical files by hand using the name of the defendant[,] includ[ing] the search term used[.]"); *Parker v. ICE,* Civ. A. No. 15-1253, 2017 U.S. Dist. LEXIS 29548, at *20 (D.D.C. Mar. 2, 2017) ("ICE explains in detail how it determined which

systems were likely to contain responsive documents, and describes its process for searching those systems[,]" including "using [Mr. Parker's] name as a search term."); *Barouch v. Dep't of Just.*, 962 F. Supp. 2d 30, 54-55 (D.D.C. 2013) (finding that EOUSA "conducted an adequate search" using the procedures outline in both Finney and Salazar declarations).   Even where an agency has not explained the origin of its search terms, Courts have nonetheless found the search terms that were employed were reasonable . . . after comparing the search terms utilized in response to the plaintiff's FOIA request.   *Heffernan v. Azar*, 317 F. Supp. 3d 94, 108 (D.D.C. 2018).   Because Defendants' search was reasonably calculated to return responsive records, it was adequate under FOIA and summary judgment is appropriate.

**B.      CBP Properly Redacted Information under FOIA Exemptions 6 and 7(C)**

Plaintiff seeks disclosure of the A-number, or similar unique identifier, that would enable tracking and aggregation of data about individuals across multiple data sets.   Howard Decl. at 9 ¶ 34.   Tellingly, initially, Plaintiff had requested that A-file information be removed or redacted, and that records stored in separate tables should not be joined.   *Id.*   Like social security numbers and addresses, disclosure of a unique identifier like an A-Number is exempt from disclosure pursuant to Exemptions 6 and 7(c) as disclosure would pose an unwarranted invasion of privacy of those people whose encounters with Border Patrol are reflected in the production. Production of this personally identifiable information could lead to identifying the third-party individuals.   *Id.* at 9-10 ¶ 35; *see also Long v. ICE*, 279 F. Supp. 3d 226, 244 (D.D.C. 2017) ("The court holds that Defendant properly invoked Exemption 6 to withhold the names and contact information of those individuals who prepare and receive snapshots of the EID because the public interest in disclosure does not outweigh the individuals' privacy interest in nondisclosure.").

Although the records that an agency locates in response to a request for records ordinarily must be produced, FOIA authorizes agencies to withhold certain documents and information; namely, those that satisfy the requirements of any of the nine statutory exemptions.   *See Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).   Exemption 6 shields information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   Exemption 7(C) protects law enforcement records or information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).   For FOIA Exemption 6 to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual."   *Dep't of State v. Wash. Post Co*., 456 U.S. 595, 602 (1982).   For FOIA Exemption 7's threshold, "[a] record is considered to have been compiled for law enforcement purposes if it was created or acquired in the course of an investigation related to enforcement of federal laws and nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality."   *Quinon v. FBI,* 86 F.3d 1222, 1228 (D.C. Cir. 1996).

Once these thresholds are met, FOIA Exemption 6 requires the agency to balance the individual's right to privacy against the public interest in disclosure, s*ee Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991), and FOIA Exemption 7(C) embodies heightened privacy protections.   *See Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989); *NARA v. Favish*, 541 U.S. 157, 165-66 (2004). "[T]he privacy inquir[ies] of Exemptions 6 and 7(C) are essentially the same," although Exemption 7(C) sets a lower invasion threshold to justify withholding.   *Jud. Watch, Inc. v. Dep't of Just.*, 365 U.S. 1108, 1125 (D.C. Cir. 2004); *see also ACLU v. Dep't of Just.*, 655 F.3d

1, 6 (D.C. Cir. 2011) (Exemption 7(C) provides similarly, albeit broader, privacy protections and "establishes a lower bar for withholding material.").   Privacy is of particular importance in the FOIA context because disclosure under FOIA is tantamount to disclosure to the public at large.   *See Painting & Drywall Work Preservation Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).   Thus, the Supreme Court has adopted a broad construction of the privacy interests protected by Exemptions 6 and 7(C).   *See Reps. Comm.*, 489 U.S. at 763.

By contrast, the courts have narrowly construed the public interest in disclosure of information.   The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is contribut[ing] significantly to public understanding of the operations or activities of the government.'"   *Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *Reps. Comm.*, 489 U.S. at 775); *see also Lepelletier v. FDIC*, 164 F.3d 37, 46-47 (D.C. Cir. 1999) ("[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.").   "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."   *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).   Plaintiff bears the burden of demonstrating that the release of the withheld information would serve this interest.   *See Carter v. Dep't of Com.*, 830 F.2d 388, 391-92 & nn.8 & 13 (D.C. Cir. 1987).

D.C. Circuit decisions "have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records[.]"   *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) (collecting cases). Indeed, in *SafeCard*, the Circuit "adopted a categorial rule permitting an agency to withhold information identifying

private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*, 349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206).   FOIA makes no exception for the privacy interests of those with criminal records or aliens.   *Shaw v. Dep't of State*, 559 F. Supp. 1053, 1067-68 (D.D.C. 1983) (noting that "the predictable damage to the individual's privacy, including the potential damage to the individual's reputation and livelihood was weighed and balanced against the benefit to the general public that would flow from the release of the information" outweighed any public interest).

In light of the related nature of the inquiries under Exemptions 6 and 7(C), CBP mostly applied the exemptions here jointly and defends them as such.   Here, CBP asserted Exemption 7(C) (along with Exemption 6) to protect unique identifiers like a A-Numbers because disclosure would pose an unwarranted invasion of privacy of those people whose encounters with Border Patrol are reflected in any such production.   *See* Howard Decl. at 9 ¶ 35.   These redactions are appropriate under D.C. Circuit precedents.

For example, in *National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989), the plaintiff sought personal identifying information of retirees for the purpose of recruiting them.   The D.C. Circuit held that the information was protected under FOIA Exemption 6 because there was a substantial probability that there would be an invasion of privacy, as others would not overlook an opportunity to obtain such a list of qualified prospects for goods, services, and causes likely to appeal to financially secure retirees.   *Id*.   Similar concerns undergirded the rulings in *Department of Air Force v. Rose*, 425 U.S. 352 (1976), and *Arieff v. Department of Navy*, 712 F.2d 1462 (D.C. Cir. 1983), where although the records in question did not on their face identify particular individuals, sufficiently motivated members of

16

the public might be able to link the information to specific individuals.    Clearly, personal

identifiers like an individual's social security number has a specific relationship to that

individual, thus meeting the threshold requirement for Exemption 6 protection.    *See Prison*

*Legal News v. Lappin*, 780 F. Supp. 2d 29, 40 (D.D.C. 2011).

When courts find that the records were correctly redacted under Exemption 6, they need

not examine FOIA Exemption 7(C), which offers greater protection for law enforcement records.

*Smith v. Dep't of Labor*, 798 F. Supp. 2d 274 (D.D.C. 2011).    Indeed, protecting individuals

against the stigma of being mentioned in the context of a law enforcement investigation is the

precise purpose of Exemption 7(C).    *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of*

*Just.*, 658 F. Supp. 2d 217, 239 (D.D.C. 2009). In this case, Defendants' decision to withhold

border crossing violators' A-Numbers and other identifying information is proper under FOIA

Exemption 7(C).    *See Banks v. Dep't of Just.*, 813 F. Supp. 2d 132, 143-44 (D.D.C. 2011)

(approving of agency's withholdings of personal information such as address and phone numbers

of individuals who provided information in the investigation, Social Security numbers, drivers'

license numbers, credit card numbers and license plate numbers under Exemption 7(C)); *see also*

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007 (withholding the names,

addresses, telephone numbers, social security numbers, and other such private information

regarding law enforcement officials, and unnamed third-parties is appropriate under FOIA

Exemption 7(C)); *Banks v. Dep't of Just.*, 757 F. Supp. 2d 13, 18 (D.D.C. 2010) (withholding

names of and identifying information about crime victims mentioned in the law enforcement

records of the Federal Bureau of Prisons); *see also Long*, 279 F. Supp. 3d at 244.    Moreover,

Plaintiff has not pointed to any evidence that disclosure of the personal information contained in

the records would shed light on illegal activity by Defendants or that the incremental public

interest in such information is sufficient to outweigh the privacy interests at stake.   *See Banks*, 813 F. Supp. 2d at143-44 (citing *SafeCard*, 926 F.2d at 1206).   Thus, the Court "need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F.2d at 879.

## C.    CBP Properly Redacted Information under FOIA Exemption 7(E)

Plaintiff demands that individual line entries be further subdivided to specify each Border Patrol station or operational site or the locations as opposed to just sectors is exempt from disclosure under FOIA Exemption (7)(E).   *See* Howard Decl. at 8 ¶ 30.   Specifically, further parsing of the location data, in a data production of this size, would disclose law enforcement sensitive techniques and procedures, and enable circumvention of law enforcement by yielding patterns and inferences about operational capacity, staffing, resource allocation, and transfer routes.   *Id*. at 8-9 ¶ 31.   Furthermore, disclosure of the requested information would inform would-be violators which sites are most vulnerable, and the circumstances under which Border Patrol is prompted to redistribute entrants or personnel between stations.   *Id*. at 9 ¶ 32. Disclosure would further enable third parties to circumvent the law by altering smuggling routes and patterns of conduct, adopting new methods of criminal operation, and effectuating other countermeasures to law enforcement operations, or planning disruptions of law enforcement operations in violation of criminal and immigration laws.   *Id*.

Exemption 7(E) protects law enforcement records or information when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E).   CBP is a law enforcement agency for FOIA Exemption (b)(7)(E) purposes.   *McRae v. Dep't of Just.*,

869 F. Supp. 2d 151, 169 (D.D.C. 2012) (holding that CBP "codes, case numbers, and other computer information pertaining to [various databases] . . . are techniques and procedures for law enforcement investigation."); *Touarsi v. Dep't of Just.*, 78 F. Supp. 3d 332, 349 (D.D.C. 2015) (same); *Gamboa v. Exec. Off. for U.S. Attys.*, 65 F. Supp. 3d 157, 169 (D.D.C. 2014) (same).

This exemption generally protects information that would reveal law enforcement techniques and procedures that are not well known to the public as well as non-public details about the use, application, or deployment of well-known techniques and procedures.  *See, e.g., Soghoian v. Dep't of Just.*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (protecting non-public details about use of electronic surveillance because disclosing what information is collected during surveillance, how it is collected, and when it is not collected could allow criminals to evade detection); *McGehee v. Dep't of Just.*, 800 F. Supp. 2d 220, 236-37 (D.D.C. 2011) (finding that Exemption 7(E) does not require that techniques be unknown to public where release of non-public details of such techniques would allow them to be circumvented).

"Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] 'demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law.'"  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1192-1194 (D.C. Cir. 2009).   Therefore, Exemption 7(E) "exempts from disclosure information that could increase the risks that a law will be violated or that past violators will escape legal consequences."  *See id.* at 1193.

As for the FOIA Exemption 7(E) threshold, the Howard Declaration meets this relatively low bar of showing a logical relationship between disclosure and risk of circumvention.   See Howard Decl. at 8-9 ¶¶ 30-33.   Courts generally have affirmed the withholding of information related to databases – metadata, codes, and structures—under Exemption 7(E) for risk of cyber-

attack or data breach.   *See Long v. ICE*, 464 F. Supp. 3d 409 (D.D.C. 2020); *see also Levinthal v. Fed. Election Comm'n*, 219 F. Supp. 3d 1, 8 (D.D.C. 2016) ("[T]he court finds that there is a material risk that comprehensive knowledge of the organization of the databases could enable a bad actor to execute an attack undetected.").   While this Court recognized the risk of circumvention under FOIA Exemption 7(E) related to data codes and hacking, *see Long III*, the risk posed here, *i.e.*, border crossing vulnerabilities that can be exploited, have also been recognized.   *See Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1 (D.D.C. 2014) (FOIA Exemption 7(E) redactions proper where "the records refer to information, including how CBP officials assess vulnerable areas along the border, that could be used to 'encourage decisions to violate the law or evade punishment.'"); *see also Showing Animals Respect & Kindness*, 730 F. Supp. 2d at 199-200 (finding that files revealing "specific details of surveillance techniques, including equipment used and location and timing of use," was exempt under 7(E) because it "could compromise [the agency's] ability to conduct future investigations"); *Strunk v. Dep't of State*, 905 F. Supp. 2d 142, 148 (D.D.C. 2012) (concluding that release of computer screen transaction codes, computer transaction codes and computer function codes, although "not themselves techniques and procedures for law enforcement investigations or prosecutions" are exempt under 7(E) because it "could reasonably be expected to risk circumvention of the law"); *Miller v. Dep't of Just.*, 872 F. Supp .2d 12, 29 (D. D.C. 2012) (withholding database numbers relating to procedures concerning use of law enforcement resources and databases and database case program and access codes on the ground that "disclosing [them] would expose a law enforcement technique, promote circumvention of the law by allowing criminals to conceal their activity, or allow fraudulent access to DEA's databases."); *Elec. Privacy Info. Ctr. v. Customs & Border Prot.*, Civ. A. No. 14-1217 2017 U.S. Dist. LEXIS 42800, at *10-11 (D.D.C. Mar. 24,

2017) (noting that it was sufficient that there is a logical connection between the disclosure of records detailing the function, access, navigation, and capabilities that aid in the enforcement of customs and immigration laws and the risk that disclosure could facilitate circumvention of the law.).

Thus, for the foregoing reasons, any additional database information Plaintiff seeks is exempt under FOIA Exemption 7(E).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment should be granted.

Dated: January 11, 2022                    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.   20530
Telephone: (202) 252-2562