UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **BUZZFEED, INC.** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **U.S. DEP'T OF HOMELAND SEC. &** ) <br> **U.S. CUSTOMS AND BORDER** ) <br> **PROTECTION,** ) <br> ) <br> Defendants. ) | Civil Action No. 19-cv-3062 (DLF) |

**OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Department of Homeland Security, *et al*. ("Defendants" or "DHS"), by and through the undersigned counsel, respectfully submit Defendants' Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in support of Defendants' Motion for Summary Judgment. In this action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*., ("FOIA"), Defendants moved for summary judgment, *see* ECF No. 37, and Plaintiff has opposed and filed a cross-motion. *See* ECF No. 38, 39.

Defendants moved for summary judgment on the adequacy of its search and withholdings. Specifically, Defendants justified its withholdings under FOIA Exemption 6, 7(C), and 7(E). "Plaintiff has elected not to challenge the adequacy of Defendants' search for the records." ECF No. 39-1 at 4 n1 ("Pl's Cross/Opp'n"). "It is well-settled that where a non-moving party fails to oppose arguments set forth in a motion for summary judgment, courts may treat such arguments as conceded." *Evans v. Holder*, 618 F.Supp.2d 1, 13 (D.D.C. 2009).

1

Defendant withheld the Alien or A-Numbers of the individuals who have had encounters with CBP because disclosure of the Personally-Identify Information ("PII"), like Social Security Numbers, would constitute an unwarranted invasion of personal privacy and Plaintiffs have not proffered a sufficient public interest to override the individuals' PII.  Plaintiff argues that all the requested information "would allow Plaintiff and the public to track the detainees and the specific sites where they were detained across the multiple data sets Defendants have produced." Cross/Opp'n at 1.  Specifically, Plaintiff appears to argue that the Alien Numbers are not actually identifying, that Defendant should be able to provide an alternative unique identifier, *see id*. at 5-7, and that, even if the information was identifying, public interest in how long Defendants hold children in custody outweighs any privacy interest.  *Id*. at 7-10.

The undisputable facts are, "[o]n November 8, 2020, CBP . . . released a spreadsheet . . . comprising over 4,423,000 unredacted rows of responsive data, reflecting" "Border Patrol sector [of apprehension], Date and Time of Apprehension, Citizenship, Gender, Age, Demographic, Time in the U.S., Date and Time of Initial Booking, Date and Time of Final Booking, [and] Time in Custody[.]"  *See* ECF No. 37, Declaration of Patrick Howard at 7 ¶ 24 ("Howard Decl."). Presumably, this disclosure did not serve Plaintiff's ends, so Plaintiff sought individuals' Alien Number or A-Numbers instead.  *Id*. at 9 at 34.  Like social security numbers and addresses, disclosure of a unique identifier like an A-Number would pose an unwarranted invasion of privacy of those people whose encounters with Border Patrol are reflected in the production.  *Id*. at 9-10 ¶ 35.  Production of this personally identifiable information could lead to identifying the third-party individuals.  *Id*.  A key feature of databases like EID, shared by multiple law enforcement partners, is the use of multiple data points – especially identifiers like A-numbers -

to ensure accurate identification of a person, even with incomplete information." *Id*. In light of the massive amount of information disclosed, Defendants are concerned about a "mosaic effect" by which information "aggregated from public, private, breached, or open sources [can be used] to identify or profile an individual, family, or social group." *Id*. at ¶ 36.[1]

Instead of raising a disputed fact, Plaintiff's sole challenge is that "[t]he way the data has been produced to us makes it impossible for us to accurately determine how long immigrants, including children, were being detained at Border Patrol facilities." Declaration of Adolfo Torres, ECF No. 39-2 at 1 ¶ 5 ("Torres Decl."). Plaintiff does not dispute that part of the information they received includes dates of initial and final bookings as well as "Time in Custody." Howard Decl. at 7 ¶ 24. In fact, they concede that "Defendants have provided custody data since 2010 showing where individuals were held and for how long." Pl's Cross/Opp'n at 8. To solve this alleged issue, Plaintiff seeks to have Defendants violate FOIA

---

[1] A mosaic of information forms when "[t]housands of bits and pieces of seemingly innocuous information can be analyzed and fitted into a place to reveal with startling clarity how the unseen whole must operate." *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978). The theory recognizes the importance of protecting "[w]hat may seem trivial to the uninformed [but what] may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *CIA v. Sims*, 471 U.S. 159, 178 (1985). Courts have applied the mosaic theory in FOIA cases, primarily in analyzing Exemption 1 and Exemption 3 claims in the national security context. *See, e.g., id*. ("bits and pieces" of information "'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'") (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980); *Edmonds v. DOJ*, 405 F. Supp.2d 23 (D. D.C. 2005). However, courts have recognized that the theory can be applied to protect information under other FOIA exemptions. *See, e.g., Ctr. for Nat'l Sec. Studies*, 331 F.3d at 929 (applying theory in Exemption 7(A) case); *Rosenberg v. DHS-ICE*, 13 F.Supp.3d 92, 107 (D. D.C. 2014) (upholding Exemption 7(C) withholdings where pieces of information could be pieced together to identify third parties); *Lewis-Bey v. DOJ*, 595 F.Supp.2d 120, 137 (D. D.C. 2009) (concluding that the defendant properly redacted "confidential source codes[,] . . . dates and other identifying information" in order "to create a mosaic of protection" under Exemption 7(D)).

by providing a quintessential personal identification number, which is the apprehended individuals' A-Numbers.  This is tantamount to Plaintiff requesting individuals' Social Security Numbers.  *See* Howard Decl. at 9-10 ¶ 35.  Alternatively, Plaintiff speculates that there is somehow an unspecified "unique identifier" or "database identifier for each detainee."  Torres Decl. at 1-2 ¶ 7; Pl's Cross/Opp'n at 4.

In addition to not raising a factual dispute and instead complaining that the disclosed data does not serve their purposes, Plaintiff appears to raise a legal argument that A-Numbers are not actually personally identifying and misconstruing the holding of a D.C. Circuit case and citing a ruling of this Court where an agency "refused to produce birth dates [because release] would identify third-party individuals."  Pl's Cross-Opp'n at 6.  Plaintiff's sole legal argument fails because both rulings they rely on are inapposite.  Actually, the D.C. Circuit merely "conclude[d] that resolution of the case on summary judgment without affidavits and evidentiary hearings sufficient to resolve the factual disputes was error."  *CEI Wash. Bureau, Inc. v. DOJ*, 469 F.3d 126, 128 (D.C. Cir. 2006).  In that case, it was "only at [Circuit] oral argument did the parties discuss[ed] the processes by which one obtains an FBI or Alien Registration number, how the numbers are used, and the ways those numbers could lead to the disclosure of sensitive information."  *Id*. at 129.  Not so here.  The Howard Declaration clearly spells out the dangers attendant to disclosing A-Number and Plaintiff has not disputed any of the facts therein and have chosen to solely pursue a legal challenge.  *See* Howard Decl. at 10 ¶ 37 ("Entrants may have traveled claiming asylum, seeking emergency medical care, or fleeing other dangerous situations or people.  Thousands were juveniles.  Others may wish to avoid any stigma attached to their encounter with immigration authorities.  None have joined third-party Plaintiffs in their request

4

for disclosure."). Because none of the cases that Plaintiff cites have this level of specificity as to privacy concerns and detailed information about third party individuals, they are not dispositive legal argument on the pending motion. The level of detail of disclosed information and mosaic concerns distinguishes this case from other cases upon which Plaintiff relies.

Moreover, it is well-settled that A-Numbers, like a Social Security number, is personally identifying. For example, under 18 U.S.C.S. § 1028(d)(7) the term "means of identification" refers to "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual. And the term specifically includes, among other things name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *In re Brown*, 2018 Bankr. Lexis 3173 (D.D.C. 2018). All official records generated or held by U.S. immigration authorities should be consolidated in the A-File, maintained under and retrievable by reference to an individual's name and Alien number, and date of birth, or combination thereof. *Garcia v. USCIS*, 168 F.Supp.3d 50, 61 (D.D.C. 2016). Thus, there can be no genuine dispute that an A Number is personally identifying information.

Plaintiff's suggestion that Defendants should provide some unspecified alternative is pure speculation that such exists or can be concocted. Defendants' declaration is "presumed to be in good faith," and a requester "can rebut this presumption with evidence of bad faith." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F.Supp.2d 100, 107 (D.D.C. 2005) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991)). Plaintiff offers nothing more than opinion and speculation as to the deficiencies in the declaration, and therefore does

not undermine the deference normally afforded to an agency, and particularly in the realm of national security matters. *See Friedman v. U.S. Secret Service*, No. 06-2125, 923 F.Supp.2d 262, 2013 U.S. Dist. Lexis 20747, 2013 WL 588288, at *14 (D.D.C. 2013) (finding that, for Exemption 1, Plaintiff's "speculation as to the declarants' bad faith does not overcome the deference generally accorded to agency declarations.").

Next, Plaintiffs argue that, even if the A-Numbers are personally identifying, "the public interest in the information outweighs it." Pl's Cross/Opp'n at 7-10. Specifically, Plaintiff argues that "there is a significant public interest in whether the government violated the law and its own procedures by holding children in detention longer than allowed and the extent of these violations since 2010." *Id*. at 8. Exemption 7(C) concerns the privacy interests of third parties and requires the Court to balance such privacy interests against the public interest in disclosure of the records. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773-75 (1989). The exemption protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure. *See, e.g., Reporters Comm*., 489 U.S. at 776-780; *Lewis-Bey*, 595 F. Supp. 2d at 134 (*citing Beck v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)).

Once it has determined that the government has properly asserted a privacy interest under Exemption 7(C), the Court must balance the privacy interest of the individual mentioned in the record against the public's interest in disclosure.  *Favish*, 541 U.S. at 172; *Lewis-Bey*, 595 F.Supp.2d at 134.  "In order to trigger the balancing of public interests against private interests, a FOIA requestor must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest."  *Boyd v. Criminal Division of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (*citing Favish*, 541 U.S. at 172).  If the public interest cited by a requestor in attempting to overcome the privacy exemption is official misconduct, then the requestor must "produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred."  *Id.* at 387 (*citing Favish*, 541 U.S. at 172).

The only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm.*, 489 U.S. at 773).  Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C).  *Blanton v. U.S. Dep't of Justice*, 63 F.Supp.2d 35, 41 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282).  In the absence of any evidence that the government agency has engaged in illegal activity, information that interferes with a third party's privacy is exempt from disclosure.  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Voinche v. FBI*, 46 F. Supp.2d 26, 33 (D.D.C. 1999).

Plaintiff has not presented any facts to raise a genuine issue that the public interest sought to be promoted is "a significant one" or that disclosure of the individuals' private information is actually likely to advance the public interest, or raise a disputed fact for a reasonable person to believe that Defendants acted improperly. Plaintiff appears to aver that "there is a significant public interest in whether the government violated the law and its own procedures by holding children in detention longer than allowed and the extent of these violations since 2010." Pl's Cross/Opp'n at 8. Furthermore, Plaintiff appears to aver that Defendants were not handing over children to the Department of Health and Human Services within 72 hours of apprehension, but there are statutory exceptions to that requirement and Plaintiff has failed to demonstrate that those statutory exceptions did not apply to justify Defendants' alleged improper conduct. Therefore, Plaintiff has failed to demonstrate any alleged misconduct or that disclosure in violation of individuals' privacy would advance this alleged misconduct.

Moreover, the information that Plaintiff seeks is publicly available in the *Flores* litigation and/or on Defendants' websites, which outweighs any need to disclose these individuals' private information. *See Flores v. Garland*, Civ. No. 85-cv-4544 (DMG). CBP's Juvenile Coordinator routine provides that Court with "information about the average time in custody (TIC) for children and the average number of children in custody across the Southwest Border (SWB), as well as more detailed information regarding the Rio Grande Valley (RGV) U.S. Border Patrol (USBP) Sector." *See* Exhibits A and B. Some of the information is also publicly available at https://www.cbp.gov/newsroom/stats/custody-and-transfer-statistics and https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters.

The availability of the information sought by a FOIA requester through other sources is relevant to the public interest analysis. *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147, (D.C. Cir. 2015). Moreover, this Court has found a significant privacy interest whenever the information sought was of a type that might invite unwanted intrusions, even absent evidence that such intrusions had occurred in the past. *Niskanen Ctr. v. FERC*, 2021 U.S. App. Lexis 37254 *8 (D.D.C. 2021).

In addition, an agency need not search "for copies of documents where the agency itself has [already] provided an alternative form of access." *Tax Analysts v. DOJ*, 845 F.2d 1060, 1065-67 (D.C. Cir. 1988) (holding that copies of court records only had to be made available in an agency reading room. Agencies are not required by statute to mail copies of the records nor even to provide a requester-convenient location for access); *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. DOJ*, 2020 U.S. Dist. Lexis 42992 (D.D.C. 2020) (no privacy interest where the individuals' information is already on public *criminal* dockets). Here, there is already enough information in the public domain, including TIC information that there is no need to violate minors' expectations of privacy by disclosing their A-Numbers. The information that Plaintiff seeks is private to the individuals they concern, but does not "she[d] light on [Defendants'] performance of its statutory duties." *DOD v. Federal Labor Relations Auth.*, 510 U.S. 487, 497 (1994). Defendants have already argued in their motion that A-Numbers should be given the same treatment as Social Security Numbers and cited cases in support. *See Ecological Rights Found. v. EPA*, 541 F.Supp.3d 34, 63 (D.D.C. 2021) (disclosure of agents' names would be reasonably expected to constitute an unwarranted invasion of the agents' personal privacy when balanced against the public interest in disclosure even when some

9

supervisors' names had been previously disclosed).

Finally, Plaintiff argues that Defendants' withholding of location data is improper under FOIA Exemption 7(E).  *See* Pl's Cross/Opp'n at 11-14.  Plaintiff is splitting hairs by arguing that "[a]ll of the data and records at issue in this case pertain to immigration detention. Defendants have not established how the location data or database information relates to an 'investigation or prosecution.'"  *Id*.  Plaintiff also argues that Defendants have neither shown that the location data are techniques or procedures or that their release could lead to circumvention of the law.  *Id*.  Exemption 7(E) protects law enforcement records or information when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

These arguments are foreclosed by well-settled law in this Court.  First, "the Court must determine whether the records were compiled for law enforcement purposes."  *Jud. Watch, Inc. v. Dep't of State*, 282 F.Supp.3d 36, 46 (D.D.C. 2017).  Second, the Court "must determine whether release of those records would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  *Id*.  The Howard Declaration clearly satisfies the first requirement.  *Ctr. for Biological Diversity v. Army Corps of Eng'rs*, 405 F.Supp.3d 127, 146 (D.D.C. 2019) ("CBP's declaration sufficiently explains how information that would result in disclosure of law enforcement vulnerabilities is information related to law enforcement techniques, procedures, or guidelines.").

As for the second step, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). CBP produced location information identifying the "Sector" in which the encounter occurred. *See* Howard Decl. at 8-9 ¶ 31. Further parsing of the location data, in a data production of this size, would disclose law enforcement sensitive techniques and procedures, and enable circumvention of law enforcement by yielding patterns and inferences about operational capacity, staffing, resource allocation, and transfer routes. *Id*. Disclosure of the requested information would inform would-be violators which sites are most vulnerable, and the circumstances under which Border Patrol is prompted to redistribute entrants or personnel between stations. *Id*. at 9 ¶ 32. Production would enable third parties to circumvent the law by altering smuggling routes and patterns of conduct, adopting new methods of criminal operation, and effectuating other countermeasures to law enforcement operations, or planning disruptions of law enforcement operations in violation of criminal and immigration laws. *Id*. Plaintiff has not disputed these facts. Rather, Plaintiff relies solely on legal arguments that are unavailing.

Per the Howard Declaration, the withheld information would disclose Defendants' operations and vulnerabilities, which are not readily-accessible public information, the disclosure of which could risk appropriation to circumvent the law. *See Gilman v. Dep't of Homeland Sec.*, 32 F.Supp.3d 1. 21 (D.D.C. 2014) ("[T]he Court finds that CBP has shown that the challenged withholdings detailing the operational need [including Sectors] to determine fencing are appropriately withheld under FOIA exemption 7(E)"); *see also Showing Animals Respect &*

11

*Kindness*, 730 F.Supp.2d at 200 (finding that documents detailing surveillance techniques logically risked circumvention of the law because, "although trespassers and poachers . . . likely know that they are subject to surveillance, the details of the surveillance techniques are unknown to them"); *Burnett v. DOJ*, No. 21-5092, 2021 WL 6102268, at *2 (D.C. Cir. 2021) ("The release of information detailing exactly how Border Patrol collects and codes information used to pinpoint a person's identity is a technique or procedure that "might increase the risk that a law will be violated or that past violators will escape legal consequences.").

For the foregoing reasons, Defendants' motion for summary judgment should be granted and Plaintiff's Cross Motion denied.

March 28, 2022                                          Respectfully submitted,

                                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                                        United States Attorney

                                                        BRIAN P. HUDAK
                                                        Acting Chief, Civil Division

                                                        By:_____/s/_____
                                                        KENNETH ADEBONOJO
                                                        Assistant United States Attorney
                                                        Judiciary Center Building
                                                        555 4th Street, N.W. B Civil Division
                                                        Washington, D.C.  20530
                                                        Telephone: (202) 252-2562